DORE, Judge.
This is a suit against Sammie L. Escue, contractor, and his bondsman, for alleged damage to- plaintiff in the sum of $410.00 resulting from failure to perform in full the terms of a building contract. The plaintiff alleges that on September 22, 1947, he entered into a contract for the construction of a dwelling house on his property, described in the petition, arid that under the terms of said contract, the contractor, Sammie L. Escue, agreed to furnish all materials, to do and perform all the work, and to erect, build, furnish and deliver in a perfect and entirely workmanlike manner, a one-story frame composition dwelling, and that plaintiff agreed to pay the said contractor therefor the sum of $8300.00; that accordingly, the dwelling house was constructed by the contractor, and on February 5, 1948, was accepted by plaintiff, at which time there apparently were no vices, imperfections and defects in construction ; that approximately six weeks after plaintiff had accepted and moved into the dwelling, the wall paper in all the rooms and closets began to wrinkle and crack until fully one-half of the surface of the walls and ceiling of said dwelling was warped, wrinkled, and cracked and was in such an unsightly condition as to be of no use to plaintiff. He alleges that this condition was caused by inept, inexpert and inexperienced paper hanging and to the use by contractor, beneath the said *688 paper, of a poor grade of lumber; that repeated demand, to no avail, was made by-plaintiff upon the contractor to furnish a competent and qualified paper hanger and to have the aforesaid conditions corrected. Plaintiff further alleges that he has had the aforesaid condition inspected by several competent -paper, hangers in order to secure an estimate of the cost of correcting same, and that the lowest estimate which he obtained was in the sum of $410.00. He accordingly makes demand for that amount from the contractor and his bondsman, together with legal interest.
The defendants' in their answer, deny the material allegations of the petition, and in the alternative, allege, first, that the damage to the wall paper was caused by artificial heat brought into the dwelling by the plaintiff, and that plaintiff assumed the risk of damage to said wall paper because he had been informed of the danger thereto if not allowed to dry by a gradual process. In the further alternative, and only in the event that petitioner did not assume the risk of damage to the wall paper, as aforesaid, defendants show that, motivated by a desire to avoid litigation, they offered on various occasions to repair damages then present in the wall paper, but that the plaintiff refused to permit defendants’ agents, who were competent and qualified paper hangers, to make necessary and proper repairs, and that plaintiff’s said refusals caused the damage present in the wall paper on the dates of said refusals to become aggravated and that the extent of said aggravated damages should be denied plaintiff.
After trial of the case, the District Court rendered judgment in favor of plaintiff in the sum of $400.00, with legal interest from judicial demand, and costs. The defendants have appealed.
in their brief before this Court, the defendants contend, first, that plaintiff has failed to prove his main allegation that the -defects in the wall paper were caused either by inept, inexpert and inexperienced paper hanging, or by the'use-of a poor grade of lumber, and in effect, that the main cause of the damage was the use by plaintiff of excessive artificial heat before the wall paper had sufficient time to dry gradually. The evidence is contradictory as to whether or not the plaintiff was warned on that point by the contractor. The contractor claims that he did give him such a warning and plaintiff denies that he received such a warning, and contends that in all his conversations subsequent to the discovery of the damage, that particular point was never made by. the contractor or his agents, and that the only question raised was whether or not the wall paper could be patched or repaired, or whether the job would have to be done all over. As to whether or not the plaintiff did use excessive heat in the house before the paper was dry, the preponderance of the evidence is to the contrary. It is shown that he had two floor furnaces in the whole house of six rooms, and that the heat was controlled by a thermostat, which he states without contradiction, was never set at a temperature of more than 65 degrees.' It is significant also to note ■ from the evidence, that the plaintiff did not move into his dwelling until several days (two weeks, according to his testimony), after the wall paper had been hanged.
The defendants contend that the paper hanger who did this job was a'man of 34 years of experience in .that work and a man considered very competent by other paper hangers. That is true. The defendants further contend that the lumber on which the paper was hanged and the canvas and paper all met the specifications of the building contract. That also appears to be true. In any event, the preponderance of the evidence shows that the paper d-id crack all through the house, including the clothes closets (certainly the latter could not be caused by excessive heat) and that much of the paper was glued to the actual wood, instead of. to the canvas, and' that too much paste was used. It is also- admitted that the conditions which occurred in this case could occur to any paper hanger. That being so, it would seem unreasonable to attribute the -conditions to- the plaintiff and competent though he may be, *689 the condition must he attributed to the contractor, who was supposed to 'furnish all materials and all labor.
The further point made by the defendant to defeat plaintiff’s claim in its entirety, is that plaintiff is estopped because he failed to complain of any defects in the wall paper before the last payment under the contract was made, on March 6, 1948, although he had knowledge of these defects prior to that date. This final payment, in the amount of $800.00, was made by the loan company which financed plaintiff thirty days after plaintiff accepted his dwelling, and was contingent on there being no liens or privileges against the dwelling. It was made directly by the loan company and based entirely on that contingency. The fact remains that plaintiff accepted his dwelling on February 5, 1948, at which time it appeared to be in good condition. We see no merit in defendants’ contention of estoppel.
Defendants further contend that had plaintiff permitted the contractor’s agents to repair the damage at the time it was discovered, the cost thereof would have been much less than the cost at a later date. On that score, the preponderance of the evidence is to the effect that plaintiff repeatedly attempted to have the contractor correct the damage, but that his demands never resulted in any satisfactory agreement between him and the contractor, and that no real effort was made by the contractor or his agents to repair the damage so that the wall paper would be in the condition in which 'it originally was. It is obvious that the trial judge was convinced by the testimony that the conditions could be corrected only by doing the job all over, and that is our conclusion too.
The only remaining question is what would be the actual cost of doing the job over. Some of the experts have testified that by using the original canvas it could be done for from $190.00 to $225.-00. All these witnesses appear to be connected with the contractor. These same experts, the defendants’ witnesses, estimated the cost by using new ■ canvas, at from $225.00 to $390.00. The pláint'iff’s witnesses made no estimate as to repairing the damage by using the original canvas for the reason th'at they felt that the original canvas could not be used, but their estimate, by using new canvas, ranged from $400.00 to $450.00. The original cost of the job, according to the contractor was $335.00.
There is considerable 'variance in the estimates, but apparently the trial judge was impressed by the estimates of plaintiff’s witnesses, who had no connection whatsoever with plaintiff nor the contractor, and accepted the lowest amount of their estimate, to-wit, $400.00, as the just measure of damages sustained by the plaintiff as a result of the violation of the contract due to defective workmanship and/or material, and we can find no manifest error in his conclusion.
For these reasons, the judgment appealed from is affirmed.